H. Kenneth Lefoldt, Jr. v. Donald Rentfro, Jr. was a community hospital organized under the laws of the state of Mississippi. It was a political subdivision of that state. The Medical Center filed for relief under Chapter 9 of the Bankruptcy Code in March of 2014. It was unable to reorganize as an operating entity. The hospital was sold. The proceeds were insufficient to pay either the secured debt or bonds. There was never any distribution to Adams County nor payment on unsecured debt. All of the non-physical assets of the hospital were transferred to the Liquidating Trust. Those included any claims, demands, or causes of action, in particular, claims, demands, or causes of action against the former officers and board of trustees. Standing in the shoes of Natchez Regional, Mr. Lefoldt filed suit alleging a variety of acts and omissions amounting to breaches of fiduciary duties of care, loyalty, and good faith. The district court dismissed his complaint, finding that those claims were barred by the immunity afforded by the Mississippi Tort Claims Act, or the MTCA. We submit that the statute plainly does not apply to claims by the sovereign as opposed to claims against the sovereign, and today request that the district court be reversed. Did you plead, are you telling us that they were acting within the scope of their duty, within the course and scope of their employment, in making these mistakes? That is correct. They were acting in their capacities as officers or as members of the In his 1984 decision in Pruitt v. The City of Rosedale, the Mississippi Supreme Court joined 44 other states in abrogating the judicially created doctrine of sovereign immunity. In response, the Mississippi State Legislature adopted the Mississippi Torts Claim Act, which broadly re-adopts that doctrine, subject to certain exemptions and procedures. The statute has three core components. First, it reaffirms that Mississippi and its political subdivisions have and will assert the doctrine of sovereign immunity. The operative language, of course, makes no reference to potential claims by the sovereign. Second, it contains a limited waiver of that immunity and caps the amount which can be recovered by an injured party. And finally, it details the numerous statutory conditions that a claimant must satisfy in order to recover against a political subdivision. According to the District Court, the plain text of the statute bars suit by a political subdivision against its officers and directors. We submit and will detail that in fact a plain reading leads to the conclusion that this is a claim to buy as opposed to by the sovereign. The Mississippi Torts Claim Act defines a claim, and I quote, as a demand to recover damages from a governmental entity as compensation for injuries. A claim is asserted by a defined claimant who is a, quote, person seeking compensation under the provisions of the act. Governmental entities are defined by the MTCA to include political subdivisions, which in turn are specifically defined to include community hospitals like Natchez Regional. An injury for which a claim may be asserted means death injury to a person, damage to or loss of property, or injury that a person may suffer. A person may suffer. It is actionable at law and equity. The MTACA does not define a person, but presumably a person does not include either a political subdivision, the state, or a governmental entity, each of which is specifically defined. When you say that, I don't see where there's any type of caveat or carve-out that you're making unless you're arguing that it would be absurd if it were not. Is that the essence of the argument? The state would not want to defeat itself? Precisely. Okay. Now, the MTA, we submit that the definitional section alone precludes application. After all, this is not a claim against a political subdivision. This is a claim by a political subdivision, and that is how a claim is defined. Secondly, we submit it can't be a person because it, in fact, is otherwise defined as a governmental entity. But perhaps more compelling are the procedural sections of the MTCA, which likewise have no rational application to a political subdivision. As a condition to asserting a claim, the claimant must deliver to the chief executive officer of the political subdivision a writing which details his claim. The statute specifies what must be there. The claimant must be identified, the nature of the injury, the circumstances giving rise to the injury, all persons involved, the amount of damages, and the residence of the injured party. That notice must be delivered by hand or certified mail to the chief executive officer of the political subdivision. Not less than nine days after tendering that writing, the claimant may file suit against the political subdivision. Importantly, he must specifically name the political subdivision as a defendant. He may choose but is not required to name the employee or other person affiliated with the political subdivision who actually caused the accident. Should he do so? I'm sorry. Did these directors and officers have liability insurance? They do. So isn't the coverage of liability insurance sort of inconsistent with the idea that they're immune? I would suggest yes, Your Honor. That's presumably why they got the liability insurance. It is D&O insurance. Right, because I was sat on another case involving yet another of these hospitals a month or two ago and they all had D&O insurance. Well, one reason is that you want the defense costs covered for your employees, right? The state would want the defense costs of its employees covered. That's correct. And you also want people who are willing to work for you to say, all right, I'm going to be exposed to a lot of people out there who might sue me and I want coverage because there are some exceptions, fraud, malice, libel, slander, defamation, etc. That may not necessarily be covered, but you want certainly defense costs. That's correct. As much coverage as you can possibly get if you're going to take on a state job. That is correct, but this is D&O coverage and there will be precious few instances where any party will have a claim under director's in-office liability other than the corporation for whom they serve or a party acting derivative. Yes, but if it's a governmental entity, you're still going to be subjected to claims. That's correct, but the claims covered by the state insurance. But the whole point of the TORC Claims Act isn't it correct, sir, is that the state steps into the shoes of the employee acting in the course and scope. So the state is either going to bear those costs. By law, it doesn't insurance is irrelevant because the state is bearing the costs. And then there's a cap on the damages. That's correct. Now, as I was saying, continuing with the illustrations because I believe they're responsive to Judge Englehart's inquiry, assuming you name in the suit, the claimant names in the suit the officers and directors, unless you show there was intentional conduct, they must be indemnified and all their attorney's fees must be paid. So applying the act, obviously, if Natchez Regional sues its officers and directors and is successful, it then must indemnify them for their conduct and pay their attorney's fees. And finally, the statute contains a strict one-year statute of limitation. This Supreme Court has repetitively emphasized with reference to the statute that should not be applied in a manner which produces absurd results. And we submit the application of the statute to bar claims by the sovereign does just that. Indeed, in looking at this very statute, the Supreme Court said that the court must seek the intention of the legislature and knowing that, it must adopt the interpretation which will meet the real meaning of the legislature. Did you do any research into how, I mean, surely this kind of claim cannot be sui generis or the first instance of such a claim for malfeasance by officers or directors of a public corporation. Therefore, did you look into the tort claim statutes of any other state to see whether they, how they're applied? Well, actually, there is a case in Mississippi on this very issue. A quorum. A quorum, that's correct. Right, but it... We could find no other cases and other statutes where the state statute was raised in this context. We do know that the Federal Tort Claims Act, which is the basis on which this is modeled, has been interpreted not to protect claims asserted against federal employees by the government itself. In the legislative history, though I can provide you no cases, this legislative history makes express it's intended to protect claims by parties outside the government as opposed to claims by the government. And indeed, if the question is, is there absurd application, which has been condemned by the Mississippi Supreme Court, let me provide you with a few illustrations. Is this a case we should certify? I think not, because I think it is obvious on its face that the district court simply got it wrong this time. They got it right in the prior quorum decision. Natchez Regional, to comply with the statute, would have to give notice to itself, informing itself of its claims against itself. It would presumably be issued by its chief executive officer to its chief executive officer, either by certified mail or by person. We would then be required to wait 90 days while we considered the notice we gave to ourselves prior to filing suit. Assuming we did file suit, we would have to name ourselves as a defendant in addition to the opposite of directors, and if we prevailed in that action, we would be required to indemnify them and hold them harmless, regardless of the insurer. In filing suit, did Mr. LaFolt give the notice within one year, and, you know, was there a, I mean, I'm not quite sure why you would have pled that these employees were in the course and scope if you were just saying they were breaching their fiduciary duties. He did not give the notice because we did not believe the statute had any application. Indeed, we believe that by giving the notice and acknowledging the application of the statute, we might well indemnify these folks. We do not allege that they acted with intentional or fraudulent manner. Well, how could you, I mean, I don't see how employees could fail to comply with, you know, what is obviously a ministerial piece of work, certifying the doctors for Medicare. I'm sorry? How could they run the hospital and fail to certify the doctors for Medicare if that's one of the breaches here? How did they do so? I don't know why they failed to do so. We know they did fail to do so. Well, that's what I mean. That seems to me to go beyond just incompetence. We know, for example, that RAC audits were routinely received. The court may be familiar. These are audits of billings to Medicare and Medicaid. There is a 60-day window in which to object to those audits. Those were ignored. The 60 days ran. The audits are no longer challengeable. During the summer of 2014, excuse me, 2013, as a result, Medicare and Medicaid stopped making any payments whatsoever to this hospital. Egregious body blow for a hospital which obtained 65% of its revenues from the federal government. We know, for example, that the accounts payable were grossly overstated because the chief financial officer would routinely cut checks, eliminate the vendors from the accounts payable ledger, and then never issue the checks. I give you indicia. I see that my time is ending, but I give you indicia of the sort of conduct which we believe plainly is the sort of gross negligence which should be actionable here. Mr. Berry, let me ask you one question. You referenced the Federal Tort Claims Act and the immunity principles that were seemingly considered or the basis for this state statute, but we know as a matter of principle that in terms of federal immunity that waivers are construed very narrowly and have to be expressed, and yet aren't you arguing that we have to extrapolate from this statute a broader provision than what is written? If we follow that analogy? Judge Engler, I believe the reality of just simply looking at this statute on its face, it simply doesn't apply here. This is what this statute is about. This is about a statute that was carefully crafted to replace the judicially aggregated doctrine of sovereign immunity. This isn't a case of the sovereign being sued. It is a case of the sovereign suing for what we believe we will demonstrate are fairly egregious breaches of the duties owed by the offices of directors, and to apply the procedures here, as I said, is simply an absurdity. Let me give you one final illustration before I sit down. Under this statute, Mr. LaForte has supposedly a one-year statute of limitations and presumably claims beyond one year are questionable. Title 15 of the Mississippi Code makes clear and unambiguous, a statute of limitation cannot run against a political subdivision, period. I give you that as an illustration. This is simply a square peg that has been slammed into a round hole inappropriately, and on that basis alone. Well, you have an opportunity for rebuttal. We'll hear from Mr. Myers. Thank you. Good morning. Please, the Court. Good morning. I'm Mike Myers. I represent Mr. Heber and Mr. Mock and Mr. Renfrow, who are known throughout these proceedings as the officer defendants. Mr. Smith represents the board defendants. Let me start by addressing what Judge Starrett addressed initially, and that is, what does the statute say? And there's never been really any contention that Judge Starrett was wrong when he said the plain text of the Tort Claims Act, under that plain text, plaintiff's claims against the officer defendants fall within its scope. The statute plainly says that they are immune. That's really not in dispute. What the statute says is not in dispute. This entire case is about, well, it can't mean that, can it? We're not arguing about what it says. Well, yes, it can. Yes. I mean, I think there's a very good argument to that effect because, for all the reasons that he stated that are within the statute, but what you would be doing is tying the hands of the sovereign to pursue claims against people who are working for the sovereign. Now, that's nonsense. The sovereign has the right to tie its hands if it wants to. Well, excuse me. The sovereign, the whole purpose of this statute, and this is not purposivist. This is the doctrine of sovereign immunity preexists everything in the creation of the state of Mississippi, as we all know from the Hunts v. Louisiana and Georgia v. Coens v. Georgia and the 11th Amendment and so on. That is the preexisting. The sovereign cannot be sued. But at common law, the employees of the sovereign could be sued if they were acting outside the scope, I believe. But in any case, my point is that saying the sovereign cannot be sued is an entirely different concept from saying that the sovereign ties its own hands so that it cannot even sue its own employees. Your Honor, I'm simply saying that if the sovereign says, we want to extend that protection to employees, the sovereign has the power to do that. Do you have a single case that has ever held that anywhere in the United States? No, Your Honor, and I've never found a case in all of my research for this case that has ever said that a sovereign can sue. Well, let me cite to you the Supreme Court of California because we were very concerned about this issue. And doggone it, it's in here somewhere. I'll find it, I'll find it. I think it's in Mississippi, Massachusetts. I mean, there's even a little... Okay. Stanson v. Mott, Supreme Court of California, 1976. Action brought against Director of Department of Parks and Recreation who expended public funds to promote the passage of a park bond issue and seeking, on ground of illegality, to require the director to personally repay the funds. The Supreme Court held that although the... Well, the bottom line is, defendant could be held personally liable to repay the expended funds  That's 17-Cal-3-2-0-6-551-P-2-1, written by Justice Tobriner. Your Honor, what I heard the court say is that the issue in that case was can he be forced to repay something that was done illegally. There's no contention that any of these defendants did anything illegally. It said if he failed to exercise due care. And it said, with regard to the California Tort Claims Act, let's see, the indemnification provisions of the Tort Claims Act are not directly applicable to an action by or on behalf of a public entity to recover monies misappropriated or illegally expended. Your Honor, again, I'm not familiar with that case. Well, of course not, because nobody cited it and it was hard to find, but we found it. So, I mean, I just suggest to you that this whole... In every private corporation, the officers and directors can be held liable and they're held liable through derivative suits, for breaches of fiduciary duty, and so on and so forth. And it didn't make any sense to me in principle that if the corporation or people on behalf of the corporation can sue their employees, why should it be different if you have a publicly run corporation? Because there are all kinds of differences with public employees and it's long been recognized in Mississippi that public employees get protections because they're public servants. Why do they have officers and directors' liability policies? As Judge Owen pointed out, they can be sued in a representative capacity. They need defense coverage. Now, the fact that there's coverage... I get sued in a representative capacity all the time and I just turn it over to the DOJ and I don't bear any costs. Well, the Tort Claims Act allows entities to purchase insurance to defray those costs. The coverage doesn't just cover the officers and directors, it also covers the hospital. In fact, I believe... Again, this is not in the record, but I believe the hospital was the actual named insurer of the policy. So it's not like they're anticipating that these officers and directors are going to have personal liability. But if I could just say again, the statute says what it says. And when you start talking about statutory construction, Mississippi has said, you don't get into the issue of statutory construction unless you first show that the statute's ambiguous. And the statute's not ambiguous. But plaintiff's counsel... Well, suppose the charge here was that one of these officers had embezzled a couple million dollars from the hospital. The statute plainly says that they're not immune for that. That's true, but it also talks about gross negligence, if I'm not mistaken. So that... It does, Your Honor. Hmm? I don't believe it does. Okay, well, I've read it. It's a complicated... Well, I don't want to get you on a sidetrack. Well, and let me also point out, plaintiff's counsel said that there were 3 things that the Tort Claims Act set out to do. He left out one. One of the things that the Tort Claims Act specifically does, and 1146.7 is almost entirely dedicated to this, is providing immunity to employees. It provides much broader immunity to employees than they had before the Tort Claims Act was passed. But what it says is that the state is taking on the liability of the employees because they're acting in the course and scope, right? That is one of the things that happens. But it says, independent of that, employees are immune. They shall not be liable. I understand that, but they're immune because the state is assuming the liability. So here, I mean, I suppose your employees could claim that they get to use the D&O that the hospital purchased for them, but then you're saying that they can't possibly have... the hospital can't possibly... the hospital can seek reimbursement of defence costs under certain circumstances. Not in this case. In this case... Was that issue explored? I didn't see that issue fleshed out in the trial court's opinion or in your briefing. No, Your Honour, but in this case, if a private entity had brought these same claims against the hospital and the employees, saying that these employees were negligent, what they were basically alleging is that they did a bad job. It's more than a bad job. But if that allegation had been made by... Well, and we can test the allegations, but we're not at that stage. This was at the motion-to-dismiss stage. If a private entity had brought this lawsuit against the county and the employees, this statute says that the hospital has no indemnity rights against the employees. So the hospital could not have sued these employees under this statute, 1146.7, subsection 5. They would have no right to indemnity against them if a private entity had brought this to begin with. Well, the indemnity ends under certain circumstances. I know that. If they're acting outside the course and scope of their employment, and it's uncontested. How can a breach of fiduciary duty be inside the course and scope of one's employment? Well, Your Honour, I think that points to one of the problems in this case. The plaintiff is using this term, breach of fiduciary duty, to try to mask the fact that what he's really alleging is just simple negligence. There's no... Well, he said gross negligence from the podium today. That's what he said, but look at his complaint. He says gross in the complaint. He says gross in the complaint. I'm looking at the complaint now. On the second page, in the introductory paragraph, he uses the term gross negligence. And he also uses the term fiduciary duty. My point is that the acts that he's complaining of are not gross negligence, they're simple negligence. But the statute makes no distinction between gross negligence and simple negligence. Judge Derrett also pointed out that if you're going to look at statutory construction, the plaintiff has come forth with nothing to say, well, here's a legislative history, here's any parole evidence, here's anything to suggest that the legislature intended, anything different from what it said. Now, is Judge Sterrett in conflict with Judge Bramlett's opinion in quorum? No, Your Honour, I don't believe he is. Judge Bramlett in quorum, number one, there were allegations of fraud against those individuals. They were a private entity. Number two, the question was not, are they employees? The question is, are they an instrumentality of the state? And he distinguished a prior Mississippi Court of Appeals opinion and said that was limited to its circumstances. Under these circumstances, they don't qualify as an instrumentality of the state. Our folks never stopped being employees. Fine. Your time's up. Mr. Smith. Thank you. I'm Roy Smith, and I represent the trustees, the Board of Trustees, the individuals, the affilees in this case.  Adams County owns the hospital. How much were they getting paid? They got a hundred and, well, in the end, like a hundred and four. Well, in the end, they were basically getting paid nothing because they said they weren't accepting checks. $140 for a meeting. And a meal. What about the employees, do you know? The officers. That's the directors? That's the directors. What about the officers? The officers are employees of the hospital that get a salary and benefits and all that. Do you know how much they got paid? I don't know how much they made, the officers. Well, are you, I don't see a clear dividing line between the argument Mr. Myers presented and whatever else has to be covered. Were you trying to divide up your arguments? Well, we were trying to just because we have different. Well, I want to pursue something that I was on with Mr. Myers because Section 1146.7 Subdivision 5 says that a government, basically says a governmental entity may be entitled to indemnification or reimbursement if the act of the omission or omission of the employee was outside the course and scope of his employment. Yes, that's exactly what it says and right before there it says if they're within the course and scope of their employment. There's a presumption. There will be no contribution, no indemnity. I understand that and my question to you is how can, I can understand negligence or gross negligence being within the course and scope. I cannot understand breach of fiduciary duty being within the course and scope of one's employment. And I'm not making any prejudgment about the allegations here. I'm just saying allegations. How can that ever be within the course and scope? Well, everything they did, they were doing as their job  They're provided with information by the officers, by the council. They are provided reports and things at these meetings and they take their actions based on the information they're provided and ask for additional information if they think it's needed. Well, this was a breach of fiduciary duty. I don't think they had a breach of fiduciary duty, but I didn't think that was what we were here on. But as far as today, we were on immunity. But we disagree with that. The trustees breached their fiduciary duty and I don't think there will be any evidence that they did. They can say that, but what they're saying is they didn't oversee the officers properly and that type of thing.  of overseeing the officers. Well, I'm not really getting at what I... You have to think about the causes of action in terms of what the statute says about where are the employees immunized, where is the state immunized, and so on. And if you don't accept the argument, if the court doesn't accept the argument that this is wholly without, that this statute just doesn't apply at all, it still may be that they have... that the allegations are sufficient to establish that they should not be indemnified by the terms of the statute. If that's what the statute says and if that's what the facts develop, then... For instance, for instance, if they had alleged that the officers and directors had committed fraud or had embezzled money, those would not be covered by the Tort Claims Act, right? Those are specifically excluded, and they have not alleged that in the complaint, and I don't think they're planning on alleging it. No, but you agree in print... The statute says that they wouldn't receive immunity if that were the case, right? If there's fraud, they're outside the scope of their employment. Right. They don't have immunity for anything outside the scope. And this is why I asked you, where do you get the idea that a fiduciary duty breach, which is alleged, I'm not making any statement about whether it's a good allegation or not, how can you show that a breach of fiduciary duty is within the course and scope? Well, all of the actions that they took were as trustees and as officers, and this is within the duties of what they were supposed to do. If they did it wrong or they did it very badly, then they call that a breach of fiduciary duty. It's still within the course of scope. Well, an officer or director breaches a fidu... Classic example, conflict of interest. The hospital has to purchase supplies. The officer creates a shadow company run by one of his relatives, and they purchase supplies at a totally inflated price. Conflict of interest, kickback, whatever it is, it's not on the up-and-up, and it's a breach of fiduciary duty. Are you saying that such an action would be within the immunity of the Tort Claims Act? That's, uh... That's arising to a level of fraud and illegality. There's nothing in this case that shows that any direct, any trustee has done anything like that. Well, it might have been... Maybe he disclosed it to the other people, but it's still a breach of... Anyway, you see my... Okay, well... Your Honor, let me also... One point I wanted to make. We've been talking about immunity and the statute and no personal liability and the intent of the legislature when they passed the Mississippi Tort Claims Act. There's one section, one statute, that I want to bring to the Court's attention. It's in our brief on page 8. It's 11... I mean, it's 41, 13, 15, 5. This is not part of the Mississippi Tort Claims Act. 41, 13, 11, subsection 5, Mississippi Code. This is not in the Mississippi Tort Claims Act. It's in the section regarding community hospitals. This is what it says. Any community hospital owner or board of trustees shall be subject to and shall be governed by the provisions of section 1146.1 of the Mississippi Code, which is the Mississippi Tort Claims Act. And it goes on to say this. For any cause of action, for any cause of action, which accrues after the 1993, on account of any wrong or tortious act or omission of any such governmental entity or its employees relating to or in connection with any activity or operation of any community hospital. This is not even in the Tort Claims Act, but this is a legislature in another section of the Mississippi Code saying that with regard to community hospitals and its employees, for any cause of action on account of any wrongful or tortious act by the governmental entity or its employees relating to or in connection with any activity or operation of any community hospital that the Tort Claims Act shall apply. So if we're looking for the intent of the legislature, you've got the sections in the Mississippi Tort Claims Act that give personal immunity to employees. And we talked about the Federal Tort Claims Act. And in the Federal Tort Claims Act, employees are not given immunity. We're talking about a difference between the... It might be patterned as the Federal Tort Claims Act, but that's a specific difference. The Federal Tort Claims Act does not give immunity to employees. The Mississippi Tort Claims Act does. So that's a huge difference. But this statute, which is not even part of the Mississippi Tort Claims Act, is further evidence of the legislature's intent that community hospitals and its employees will have immunity under the Mississippi Tort Claims Act for any cause of action. It doesn't say any cause of action  It just says any cause of action. Is a director or trustee an employee? It sure does. It says, or its employees. I know, but is a director or trustee an employee? Yes. That's undisputed in this case. Well, I know there's several things undisputed, but where does the statute say that? Just from my own... Section 1146.1F, I believe. Okay. I don't see, I don't see trustee, but I'll take your word for it that it... Well, it... It doesn't say the word trustee. It says appointed officials or appointed... Means any officer, employee, or servant of the state of Mississippi or including elected or appointed officials acting on behalf of the state. So maybe you're an appointed... They're appointed officials. Yes. Okay. So, I mean... I mean, this answers the question right here. The legislature has said that the community hospital and its employees that the Tort Claims Act shall... So I ask you once again, suppose the allegation here was that a director or officer had embezzled $2 million from the hospital. Is there no cause of action to recover... Now, you're saying that's all... That's not accepted because that's an intentional tort. That is an intentional tort. Or that's the fraud and slander and all that business. The illegal acts are also explicitly... Right, right. And that is... That's a criminal act, an intentional tort. Right. And there are other statutes that require bonds for the trustees and officers. And that's... And they may have already gotten that money. I don't know that now. There haven't been any criminal acts. And that is not even alleged. But anyway, I just think that Judge Starrett looked at everything, that his decision was correct. The plain language says there's no personal liability. 114672. No personal liability for an employee while acting within the course and scope of his employment. And here, it's stipulated and admitted that they were acting in the scope of their employment, that all the duties they were doing were in the course and scope of their employment. They have no... They can have no personal liability. And the Tort Claims Act applies. And the intent of the legislature is made more clear by 411311 subsection 5, as I just stated. And... And I don't know anything about that case you were citing from California. That's why we went on this hunt, because nobody had cited it. Well, that's a 1976 case. Well, I have a 2013 Court of Appeal from California also. And I don't know if the Mississippi Tort Claims Act and the California Tort Claims Act are identical. I haven't studied that. I understand. I understand. Okay, thank you, sir. Thank you, Your Honor. Okay, Mr. Barrier. If I may, if I can correct a couple of points I think were stated. First, the Natchez Regional, of course, had multiple types of insurance. The insurance that I was asked about is the officer and director's insurance, which has nothing to do with other types of claims as referenced by other accounts. It is solely for breaches of duties owed as officers and directors. Quite obviously, the complaint was drafted with that in mind and attempted to deal with various exclusions under that policy. And I dare say there are no claimants who may assert claims falling within the scope of that policy other than Natchez Regional or a party acting derivative of Natchez Regional. Second, there are no ways to square Judge Bramlett's decision and the district court's decision. There he was faced with a claim that the Mississippi Torts Claim Act provided immunity to the chief financial officer and chief executive officer installed by Quorum. And he simply held this statute has no application in the context of a claim by as opposed to against the sovereign. That was his ruling. And the district court recognized that. District court said, I see Judge Bramlett came to a different conclusion. I simply disagree with him. At the end of the day, we've heard nothing more than a circuitous argument. Let me ask you, did you allege that what they did was in the course and scope of employment? When you first stood up here, that's what you said. Well, I want to be very precise if I may. All of the people here were working under the umbrella of their duties as officers and directors. They plainly were grossly negligent in the execution of those duties. I would suggest Judge Jones's analogy is appropriate. Let's assume that this is a classic breach of duty of loyalty case where the board of trustees has agreed to acquire property owned by a sibling of one of the trustees without adequate disclosure. That falls within the scope of the duties of the board, but is plainly actionable absent a claim of immunity asserted under this statute. And I submit there's simply nothing in this statute that provides that immunity. There is no statement. Well, I'm just trying to get at what you allege here. What's been alleged here. Does it come within any express waiver? No. And you don't say that they were outside the course and scope of their employment? No. They failed to conduct their duties. These are primarily omissions issues. I'm just saying that the words course and scope are used in the statute, and that's not your argument. That's not our argument. Okay. That's not our argument, but we don't need to thread that needle quite frankly, because the application of the statute as a whole would be inappropriate and quite plainly would be absurd. Let us take as a specific illustration. We believe that the evidence will ultimately demonstrate that there was a pattern of failing to bill for entire departments for years prior to the chapter 9 filing because of failure to obtain credentialing. As basic an issue as there is for a hospital in today's Is there any allegation they were self-dealing or they benefited somehow or another from any of the actions that you allege? There are no classic breach of loyalty claims here, no. But if this statute applies, I think it's arguable that any default more than a year prior to the filing of the chapter 9 would be barred by the statute of limitations. That flies directly in the face Well, the fact that the limitations might be contrary to the Mississippi Constitution means it's unenforceable. Does that mean you throw out the entire act? No, I would simply apply the act as how it was intended to apply to claims against the sovereign, not by the sovereign. That's why this was adopted. I'll cite one other case which is from California more recently. The People versus Rizzo 214 Cal Appeals 4th 921 also let me see if I can get a Pacific I don't have a Pacific site but it's 2013 154 Cal Reporter 3rd 443 and that's an action against various by the State Attorney General against City Manager, Assistant City Manager Council Members and Police Chief for waste of public funds breach of fiduciary duty, negligence and so on and court holds that the Tort Claims Act does not apply. I'll close on this note. Mississippi like most states is using public corporations routinely to execute various functions. I would urge the court not to endorse a ruling which effectively immunizes its officers and directors from actions arising from their conduct which falls grossly below the statute. Two quick questions. First of all, what do you say to Judge Owen's question about certifying to the Mississippi Supreme Court? Well, candidly, the process would be extremely lengthy. As a practical matter that presents obvious problems from a trustee that has tried to wind down this estate. Secondly, we believe that if you simply read the statute make the determination that it's not absurd, it's simply unnecessary. What was my other question? I had another quick question. I don't know if this is your second one but what about the argument that was made on page 8 that was just highlighted on the Leroy White brief the part about the statute of the 41-1311 subsection 5 where the Mississippi Hospital Code, if I'm not using the correct term, forgive me but I believe counsel just made an argument about that expressly stating that in the context of hospital management that this act should apply. It's simply a circuitous argument. I mean, it takes us back to that provision was intended to make express that the Mississippi TORC Claims Act applies to community hospitals. Fine. But we're still back to does the Mississippi TORC Claims Act... You're saying it's neither here nor there. It's purely circuitous. We don't dispute, let me emphasize we don't dispute that if this were a claim by any private individual against the hospital, their client the Mississippi TORC Claims Act would apply even though a board of trustees member may not be an employee in the way used by the MTCA. That whole is covered by that provision but it does not change the scope of the immunity or who the immunity applies to. Alright. Thank you very much. Yes sir, thank you. Oh, my other question to all you gentlemen is how many of these regional hospitals are in dire straits now? Most. How many are there? A lot of them? A lot. The last number I heard was more than 30, less than 40. They're all in very difficult shape. The principal problem of course being that they're highly dependent upon federal reimbursement. Medicare. And since they're all stand-alone they in effect can't compete at the level which regional hospitals. I see. Okay. Thank you.